IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| BRENDA STORY GRISSOM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 115-096 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Brenda Story Grissom ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

**I.     BACKGROUND**

Plaintiff is a fifty-three year old female with an associate's degree in criminal justice, and she has worked as a correctional officer for more than fifteen years. Tr. ("R."), pp. 32, 199. Plaintiff protectively applied for DIB on April 29, 2013, alleging a disability onset date

of January 8, 2013. R. 185. The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. at 91-94, 98-101. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") and the ALJ held a hearing on November 12, 2014. R. 40. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Dr. Carey A. Washington, a Vocational Expert ("VE"). Id. On December 10, 2014, the ALJ issued an unfavorable decision. R. at 32.

Applying the five-step sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 8, 2013, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq*.)

2. The claimant has the following severe impairments: diabetes mellitus; peripheral neuropathy; obesity; fibromyalgia; general affective disorder; and affective disorder (20 C.F.R. §§ 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work[1] as defined in 20 CFR 404.1567(b) except for the following limitations: The

---

[1] "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

2

>     prescribed use of a cane to ambulate; no more than occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; no more than occasional balancing, stooping, or crouching; no kneeling or crawling; avoidance of all exposure to hazards involving heights or dangerous machinery; only simple work; and avoid waiting on the public as customers.
>
> 5.  Considering the claimant's age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 404.1569, 404.1569(a)).

R. at 23-31.

When the Appeals Council denied Plaintiff's request for review, R. at 1-3, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal of the adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ did not: (1) account for Ms. Adrienne Wilson's findings as an acceptable "other source" under 20 C.F.R. § 416.913; (2) properly evaluate Dr. Adrian Janit's opinion and his finding that Plaintiff's ability to withstand the stresses and pressures associated with most work was markedly limited; (3) consider whether Plaintiff's sacroiliac arthropathy is a severe impairment at step two; and (4) consider Plaintiff's obesity under SSR 02.1P. (See generally doc. no. 10 ("Pl.'s Br."), pp. 4-11.) The Commissioner maintains the decision to deny Plaintiff's application is supported by substantial evidence and should be affirmed. (See doc. no. 11 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following

3

questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

4

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff argues that the ALJ erred at step two of the sequential process by failing to consider her sacroiliac arthropathy[2] as a "severe" impairment. Pl.'s Br. 9. Specifically, she asserts that she was treated for several years at the Medical College of Georgia for sacroiliac arthropathy and radiculopathy of the thoracic region, all of which have resulted in numerous treatment injections. Id. Plaintiff contends the ALJ did not discuss her sacroiliac arthropathy as either a severe or non-severe impairment at step two, and argues that her condition qualifies as severe. Id. at 10. The Commissioner argues any error in failing to analyze Plaintiff's sacroiliac arthropathy was harmless because the ALJ considered Plaintiff's sacroiliac arthropathy in his RFC determination. Comm'r's Br. 9-10. In addition, the Commissioner downplays the significance of the ALJ's step two determination, asserting that

---

[2] Sacroiliac Arthropathy is pain that is localized to the lower back, hips, and buttocks, and is commonly caused by sacroiliac (SI) joint pain. See Dr. Catherine Burt Driver, MD, Sacroiliac Joint Dysfunction (SI Joint Pain),http://www.medicinenet.com/sacroiliac_joint_pain/article.htm (last visited Jul. 10, 2016).

5

it is unimportant whether an ALJ classifies particular impairments as severe at step two so long as he finds the totality of impairments to be sufficiently severe to proceed to latter steps of the sequential process. Id.

Because the step two determination as to the severity of particular impairments has ramifications for the analyses to be undertaken in the subsequent steps, the Court does not endorse the characterization of step two set forth in the Commissioner's brief. Nevertheless, the question remains whether the ALJ's omission of Plaintiff's sacroiliac arthropathy from the ALJ's step two determination of Plaintiff's severe and non-severe impairments is supported by substantial evidence.

### A. A Claimant's Burden at Step Two of the Sequential Process Is Mild, and Only the Most Trivial Impairments May Be Rejected.

A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(4) Responding appropriately to supervision, co-workers and usual work situations; and

(5) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects her ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). At the second step of the sequential evaluation process:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. See Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (adopting proposition that severity test is " de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d 914). Under this test:

> An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The

claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with [her] ability to work irrespective of age, education, or work experience."  Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*).

### B. The ALJ's Severity Determination as to Plaintiff's Sacroiliac Arthropathy Is Not Supported by Substantial Evidence.

Here, because the ALJ failed to provide any analysis of Plaintiff's sacroiliac arthropathy or lower back issues at step two, the ALJ's decision is not supported by substantial evidence.  In fact, sacroiliac arthropathy, or more generally lower back pain, does not appear in the ALJ's step two discussion as either a severe or non-severe impairment, despite evidence that Plaintiff was diagnosed with sacroiliac arthropathy by several treating physicians, received treatment injections, and consistently raised her low back pain diagnoses and treatments at the hearing.

On August 3, 2011, Plaintiff received treatment at the Medical College of Georgia (MCG) from Dr. William T. Parker who examined Plaintiff's lumbar spine.  R. 880.  Dr. Parker diagnosed Plaintiff with DM type 2 with diabetic peripheral neuropathy, lumbar spondylosis, chronic pain, morbid obesity, and sacroiliac pain.  R. 881.  Dr. Parker opined that Plaintiff exhibited a depressed mood due to her chronic pain, and Plaintiff's pain was refractory to any intervention.  Id.  Dr. Parker also opined Plaintiff was "unlikely to gain any further benefit from procedures in the future."  Id.

On November 29, 2012, Plaintiff was again treated at the MCG for back pain and was seen by Dr. Anuj Aryal.  R. 800.  Dr. Aryal injected Plaintiff's sacroiliac joint with

8

Omnipaque 240, methyprednilone, and lidocaine. Dr. Aryal opined that Plaintiff tolerated the procedure well, and noted Plaintiff's pain in her right sacroiliac joint subsided after the procedure. R. 801. Dr. Aryal diagnosed Plaintiff with sacroiliac arthropathy in both his preoperative and postoperative diagnoses. R. 800.

On April 3, 2013, Plaintiff was seen by Dr. John Bieltz, an orthopedic surgeon who performed an MRI of Plaintiff's lumbar spine. R. 1040. Dr. Bieltz determined Plaintiff suffered from moderate lumbar facet degenerative joint disease, spinal annul stenosis, neuroformin ED stenosis, and potential borderline left nerve root impingement. R. 1040-41. Dr. Bieltz prescribed Plaintiff a cane to ambulate. R. 47.

Furthermore, Plaintiff testified at the hearing that Dr. Bieltz prescribed her a cane to ambulate, she had received numerous injections in her back at the sciatic nerve, underwent back related physical therapy, and used a TENS unit[3] that was provided by a physical therapist. Id. Plaintiff also testified she was taking medication for her back pain, and used heating pads on her back and hips. R. 48.

At step two, the ALJ found as severe Plaintiff's diabetes mellitus, peripheral neuropathy, obesity, fibromyalgia, general affective disorder, and affective disorder. The ALJ found as non-severe Plaintiff's history of breast cancer, status post successful treatment including mastectomy and reconstruction, hyperlipidemia, thyroid disorder, gastroesophageal reflux disease, and migraine headaches. R. 24. Despite Plaintiff's hearing testimony, the

---

[3]A transcutaneous electrical nerve stimulation (TENS) unit is a back pain treatment that uses low voltage electric current to relieve pain. TENS for Back Pain, http://www.webmd.com/back-pain/guide/tens-for-back-pain (last visited Jul. 10, 2016).

ALJ did not mention Plaintiff's sacroiliac arthropathy or lower back pain at step-two as either a severe or non-severe impairment.

The Commissioner attempts to explain away the ALJ's failure to analyze or mention Plaintiff's sacroiliac arthropathy as harmless error, arguing a remand would be a waste of judicial resources. Comm'r's Br. 10. The Commissioner notes, among other things, that the ALJ found the RFC determination adequately considered Plaintiff's sacroiliac arthropathy by including a limitation for the use of a cane. Id. However, the Commissioner's attempt to justify the ALJ's decision is improper because the Court's "limited review [of the record] precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*) (citing Bloodsworth, 703 F.2d at 1239). Whatever the merits of the Commissioner's argument, the critical fact is that her argument was not made by the ALJ at step two, and the Court declines this invitation to conduct a *de novo* review of the evidence with regard to Plaintiff's sacroiliac arthropathy or low back pain, as such determination is for the ALJ, not this Court, to make in the first instance. See Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]").

Although the ALJ noted Plaintiff used a cane and incorporated a cane into the RFC, the ALJ did not analyze Plaintiff's cane usage in the context of her back issues. R. 27-28. Instead, the ALJ noted the use of the cane was due to Plaintiff's "dizziness and poor balance." R. 27. As stated *supra*, Dr. Bieltz examined Plaintiff's lumbar spine and found

moderate lumbar facet degenerative joint disease, spinal annul stenosis, neuroformin ED stenosis, and potential borderline left nerve root impingement, and prescribed Plaintiff a cane to ambulate due to these ailments, not due to any dizziness or poor balance. R. 1040-41, 47.

At step four, the ALJ determined Plaintiff could perform light work, but failed to consider the impact Plaintiff's lower back ailments has on her ability to perform work in this physical exertion category. See R. 27, 28, 31. Specifically, light work may involve "a good deal of walking or standing," "pushing and pulling," and lifting up to twenty pounds. The ALJ did not determine whether Plaintiff could perform these tasks in light of her lower back ailments and prescribed use of a cane. In determining Plaintiff could perform light work, the ALJ only examined Plaintiff's severe and non-severe impairments as determined at step two, failing to include Plaintiff's sacroiliac arthropathy or any other lower back ailment. See R. 31.

In sum, because the ALJ failed to discuss Plaintiff's sacroiliac arthropathy or any low back issues at step two of the sequential analysis, a remand is warranted. The Court need not reach Plaintiff's remaining contentions. Of course, should the District Judge accept this recommendation, on remand, Plaintiff's claims must be evaluated in accordance with the five-step sequential evaluation process and in compliance with the applicable regulations and case law in all respects.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be

**REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 2nd day of August, 2016, at Augusta, Georgia.

_/s/ Brian K. Epps_
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA